**AFFIDAVIT OF SPECIAL AGENT JENNIFER WALKER CASE**
**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**IN SUPPORT OF A COMPLAINT**

I, Jennifer Walker Case, do depose and say:

### INTRODUCTION

1.      I am a Special Agent with the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"). I have been employed as an HHS-OIG agent since December 2010. Prior to being employed by HHS-OIG, I was a Special Agent for twelve years with the United States Department of Transportation, Office of Inspector General, Office of Investigations ("DOT-OIG"). In December 1998, I graduated from the Federal Law Enforcement Training Center in Glynco, Georgia and have received training in conducting health care fraud investigations. During my training and experience, I have participated in over 50 fraud arrests and investigations. I am familiar with the various methods individuals use to commit fraud on the U.S. government and its agencies. As a Special Agent for HHS-OIG, I have investigated and participated in the investigation of violations of Title 18 of the United States Code, including violations of Health Care Fraud, Title 18 U.S.C. § 1347.

2.      This affidavit is in support of a criminal complaint charging Defendant **BLESSING SYDNEY IWUALA ("IWUALA")**, born 1959, with health care fraud, in violation of Title 18, United States Code, Section 1347, and making a false statement to a federal agency, in violation of Title 18, United States Code, Section 1001.

3.      The facts stated herein are based upon my personal involvement in this investigation, my training and experience, my review of documents, and information provided to me by other law enforcement officers. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation. Instead, I only have included those facts that I believe are needed to establish the requisite probable cause to support the criminal complaint.

### DISCUSSION OF EVIDENCE

4.      **IWUALA** co-owned and operated a Durable Medical Equipment (DME) company called Above All Home Care and Medical Supply Inc. ("Above All"). Above All was incorporated in Massachusetts in November 2007 and opened for business in December 2007. Above All's original address was 361A Washington Street in Braintree, MA.

5.      In January 2008, Above All submitted an application to Medicare to become an accredited DME supplier for Medicare beneficiaries. Medicare approved Above All's application on April 3, 2008.

6.      At some point in 2008 or 2009, **IWUALA** entered into an arrangement with

another individual, JN, to expand Above All's business. **IWUALA** and JN are both originally from Nigeria, and they were acquainted socially. JN had his own medical supply company, but on June 19, 2008, Medicare revoked JN's privileges to supply Medicare beneficiaries with DME. JN informed **IWUALA** that JN could obtain prescriptions for DME for Medicare beneficiaries in Texas. JN and **IWUALA** agreed that JN would handle all aspects of the DME supply business for the Texas patients, but the claims would be billed to Medicare using Above All's name. JN and **IWUALA** agreed that JN would obtain the prescriptions, obtain the equipment, deliver the equipment, and bill Medicare for the claims (using Above All's name). **IWUALA** furnished JN with blank Above All letterhead, invoices, and other documentation. **IWUALA** and JN agreed that JN would receive 65% of the payments from Medicare and **IWUALA** would keep 35% of the payments.

7. JN told us that JN purchased the prescriptions from a clinic in Houston, paying up to $1,000 per prescription. JN told us that **IWUALA** was fully aware that JN was purchasing the prescriptions. JN admitted that the claims for the Houston patients were fraudulent.

8. In February 2009, Above All began submitting claims for Medicare beneficiaries in Houston, Texas. Between February 2009 and November 2009, Above All submitted claims for 87 Texas patients, representing 91% of the 96 patients serviced by the company.

9. According to Medicare, 68 of the Texas patients have "compromised" Medicare numbers, meaning that Medicare has flagged these patients as subjects of potentially fraudulent claims. Moreover, the claims for 69 of the 87 Texas beneficiaries list the same referring physician: DG in Houston. The majority of these patients have the same diagnosis: "arthropathy including hand, lack of coordination and unspecified injuries." And most of the Texas patients received the same package of DME: 16 claims for braces, power wheelchairs, wheelchair accessories, and a heat lamp. There is also one claim from a California beneficiary that fits the Texas pattern: DG is the referring provider, and the same package of DME was billed.

10. Several Above All beneficiaries in Houston were interviewed. All of the beneficiaries reported that they had not requested and did not need the DME. Many of these beneficiaries told us that they had never heard of Dr. DG, even though DG was listed as their referring provider. Moreover, Medicare paid Above All for more and higher-quality equipment than Above All delivered to these patients.

11. For instance, one beneficiary, YF, recalled that, in the summer of 2009, three black women with African accents knocked on her door and asked for her Medicare card. YF showed them her card and they wrote down the information. A few weeks later, a woman called YF and said she had a power wheelchair for her. YF said that she did not need a wheelchair. The woman insisted that it could not be delivered to anyone else, so YF told her it could be delivered. A couple weeks later, a black man in a white van came by her house twice and delivered a variety of DME, including a power wheelchair and

braces. When she questioned the delivery man, he replied that the DME came from "the black preacher man" and that Medicare had paid for the equipment. The referring physician on Above All's claims for YF was Dr. SB in Houston. YF had never heard of Dr. SB. Medicare paid Above All almost $3,400 for equipment for YF.

12. The claims for five additional Houston Medicare beneficiaries identify Dr. SB as the referring provider. According to Dr. SB, Dr. SB has never treated or even heard of any of these patients.

13. Another Houston-based beneficiary, MR, recalled being paid to see Dr. DG—the physician listed for 69 of Above All's patients. MR recalled that a white van picked up MR and other elderly neighbors and took them to the doctor. Dr. DG did not examine MR; instead, Dr. DG asked a few questions and gave MR paperwork to complete. Shortly after the visit, a black African man delivered a scooter to MR's house. Medicare paid Above All more than $6,500 to deliver to MR a power wheelchair, a heat lamp and braces. MR received a scooter, not a power wheelchair, and MR never received a heat lamp or braces.

14. As another example, Medicare paid more than $5,700 to Above All for DME, including a power wheelchair, for RC, a blind beneficiary in Houston. TB, RC's daughter, recalled that a black man dropped off some medical equipment, including a scooter (not a power wheelchair) that never worked and was never used. In addition, RC received several wraps and braces that were far too small to fit RC and appeared to be of low quality.

15. Even though Medicare requires that a supplier maintain medical records and documentation for each of its patients, **IWUALA** only had documentation for 36 of the 96 Above All patients. He said that JN had the information for the remaining patients.

16. Above All submitted 375 DME claims for 96 patients to Medicare for $1,075,990. Medicare paid Above All $443,397.13. More than $430,000 of the amount Medicare paid was for the Texas-based patients. All of the claims were submitted between February 2009 and July 2009.

17. On July 29, 2009, JN was arrested. JN subsequently pleaded guilty to Conspiracy to Commit Health Care Fraud for separate, but related, conduct in Texas, and he is currently serving a term of incarceration. Above All submitted few claims to Medicare for Texas beneficiaries after JN was arrested.

18. Bank records reflect payments of almost $160,000 from **IWUALA** to JN, JN's wife, and related entities. Telephone records reflect numerous calls between **IWUALA** and JN in 2008 and 2009.

19. **IWUALA** admitted to me and another agent, in a recorded statement, that he had an arrangement with JN where JN handled all aspects of the Texas claims and that JN and **IWUALA** agreed that JN would retain 65% of the Medicare payments. **IWUALA** told us

that, at the time, he did not realize that JN was dishonest and that he did not know that JN's Medicare supplier privileges had been revoked.

20.     In **IWUALA**'s Medicare application for Above All, **IWUALA** listed himself and Uchenna Okwologu, his wife, as the co-owners of Above All. Section 6 of the application requires that the applicant list any individual who has an ownership interest or managing control of the DME supplier. The application defines "managing employee" as any "individual who exercises operational or managerial control over, or who directly or indirectly conducts, the day-to-day operations of the DMEPOS supplier, either under contract or through some other arrangement, whether or not the individual is a W-2 employee of the DMEPOS supplier." **IWUALA** did not identify JN as a managing employee. **IWUALA** certified that the information provided in the application was true, and further certified that he would notify Medicare if he became aware at any time that any of the information in the application was untrue.

21.     I have learned that **IWUALA** entered the United States in 1991 on a tourist visa. Upon entering the United States, **IWUALA** claimed asylum. His asylum claim is pending, according to the State Department. **IWUALA** has been issued an employment card each year since he has been in the country. **IWUALA** is married to a naturalized U.S. citizen. In 2009, his wife petitioned for **IWUALA**'s citizenship. No further information is available concerning this application.

## PROBABLE CAUSE

22.     Based on these foregoing facts, my experience, training, and discussions with other individuals involved in this investigation, I believe that probable cause exists to conclude that, in 2008 and 2009, **SYDNEY BLESSING IWUALA** committed health care fraud, in violation of Title 18, United States Code, Section 1347, by billing Medicare and being paid for DME that was not medically necessary and/or not delivered. In addition, I believe that probable cause exists to conclude that, in 2008 and 2009, **SYDNEY BLESSING IWUALA** made a false statement to Medicare, in violation of Title 18, United States Code, Section 1001, by failing to identify JN as a managing employee of Above All.

_____
JENNIFER WALKER CASE
Special Agent
U.S. Department of Health and Human Services

Subscribed and sworn to before me
On this 26th day of April, 2012

_[signature]_
_____

United States Magistrate Judge

Subscribed and sworn to before me
On this 26th day of April, 2012

_[signature]_
_____

United States Magistrate Judge